53 CCPA

**Application of Franklin I. L. LAWRENCE and Michael J. Pohorilla.**

**Patent Appeal No. 7557.**

United States Court of Customs and Patent Appeals.

Feb. 10, 1966.

William Andrew Smith, Jr., Washington, D. C., Eugene F. Buell, Pittsburgh, Pa., for appellants.

Clarence W. Moore, Washington, D. C. (Irving R. Pellman, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from a decision of the Board of Appeals affirming the rejection of claims 1, 2 and 4–10 of appellants' application [1] entitled "Flame Retardants." The statutory basis for the rejection is 35 U.S.C. § 103.

The essence of appellants' invention is the formation of a *condensation product* of a heavy petroleum residue with about 2% to about 15% by weight of a phosphorous sulfide. This condensation product, which is stated to be fire-resistant but somewhat corrosive, may be rendered noncorrosive by further reaction with sulfur or oxygen. Claims 8–10 define the process for making the fire-resistant composition; claim 7 defines the fire-resistant composition per se; claims 1, 2, 4 and 5 define articles of manufacture rendered fire-resistant by means of the fire-resistant composition, and claim 6 relates to a method of treating combustible materials to render them fire-resistant. Both appellants and the Patent Office have treated the claims as standing or falling together and we will do the same. A consideration of claim 8 will suffice for purposes of this appeal:

> 8. A process for producing a fire-resistant composition which comprises subjecting a heavy petroleum residue having a molecular weight of at least about 1,000 and a bromine number of less than about 10 to condensation with about 2% to about 15% by weight of a phosphorous sulfide at a temperature of about 400° F. to about 600° F. to form a condensation product, thereafter subjecting the resultant reaction product at a temperature within said temperature range to further condensation with a material selected from the group consisting of sulfur and oxygen.

The reference relied on is:

Hoiberg 2,450,756 October 5, 1948.

Hoiberg relates to the catalytic preparation of air-blown asphalts from high molecular weight petroleum hydrocarbons. Hoiberg states:

> This invention relates to a process for the production of asphaltic bitumens from a given base which are much lower in susceptibility than can be produced by the usual air-blowing process. This is accomplished in accordance with my invention by air-blowing high molecular weight petroleum hydrocarbons preferably within the temperature range of 400 to 500° F. in the presence of a *stable phosphorus catalytic agent,* such as phosphorus pentoxide, red phosphorus, or stable sulfides of phosphorus, such as phosphorus sesquisulfide $(P_4S_3)$, phosphorus sulfide $(P_4S_7)$ and phosphorus pentasulfide $(P_2S_5)$. All of these catalysts are stable compounds and do not decompose at the temperature required in the process. Of these, $P_2O_5$ is preferred, and the invention will be described with particular reference to the preferred catalyst. (Emphasis ours.)

Hoiberg's asphalt compositions exhibit a higher than normal ductility, which improves the ability of such compositions to penetrate surfaces coated therewith.

1. Franklin I. L. Lawrence and Michael J. Pohorilla, Serial No. 34,391, filed June 7, 1960. Two claims were allowed by the board.

The specification states that Hoiberg's products are highly effective for coating surfaces of steel, galvanized iron, or tin even though the surfaces are wet with water. Thus, the products are valuable as a coating for pipes and other exposed metal work for protection against corrosion.

In affirming the examiner's rejection of claims 1, 2, and 4–10, the board stated:

> The reaction of the petroleum residue and phosphorus pentasulfide * * * is disclosed by Hoiberg, and the claims, as worded, do not exclude the concomitant air blowing employed by patentee. We are not persuaded by appellants' contention that the phosphorus compound is stable in the process of Hoiberg and merely acts as a catalyst, noting that appellants' temperature range overlaps that of patentee and includes even higher temperatures. Although Hoiberg does state that his phosphorus compound acts as a catalyst, we note that it is not removed from the final product and its presence appears to affect its physical properties. Doubt has been expressed in the literature that the process of Hoiberg involves catalysts. Note Kirk-Othmer Encyclopedia Of Chemical Technology, Second Edition, Volume 2, Interscience Publishers, New York, 1963, page 775.[2]

Appellant makes the following argument in attempting to traverse the board's interpretation of Hoiberg:

> The Hoiberg patent is directed to the production of air-blown asphalt. Hoiberg is not interested in nor does he anywhere suggest the production of a non-corrosive flame retardant petroleum material. Hoiberg describes a process for producing air-blown asphalt in which a high molecular weight petroleum hydrocarbon is air-blown *"in the presence of a stable phosphorus catalytic agent."* * * * Hoiberg points out that "all of these catalysts are stable compounds and do not decompose at the temperature required in the process." * * * The process of Hoiberg is for the purpose of changing the penetration of the asphalt at a given softening point. In short, Hoiberg's intent is to change the physical characteristic of penetration of the blown asphalt. This is a significantly different material and a significantly different process from that of the present invention. The first and most significant difference between Hoiberg and the present invention is that Hoiberg air-blows the asphalt in the presence of a phosphorus compound acting as a stable catalyst for the resulting oxygen condensation. Hoiberg points out that the catalyst does not decompose but remains stable in his process. This must necessarily be so if it is acting as a catalyst as Hoiberg teaches. It is a well recognized principle of chemistry that catalysts do not enter into the reaction and are not changed by the reaction which they catalyze. They act merely as a transfer agent and at the end of the reaction they remain in their original state and condition. In the present invention, on the other hand, the heavy petroleum residue defined in the claims is first reacted with phosphorus sulfide to form a condensation product of the petroleum material and the phosphorus sulfide. In short, in the present invention, there is first a complete reaction and condensation of the phosphorus sulfide with the petroleum material. After this condensation is completed, there is a second condensation of the previously condensed phosphorus sulfide petroleum material with sulfur or oxygen to form a second condensa-

2. The Encyclopedia of Chemical Technology referred to by the board was not considered prior art by the board and we do not so consider it. It will not be considered in this opinion.

tion product. The practice of the present invention is such that in the original condensation reaction the phosphorus sulfide has been virtually all reacted before there is any introduction of the second condensation agent. In Hoiberg, on the other hand, the stable phosphorus compound must be present during the original air-blown step and there is no prior condensation of the asphalt with the stable phosphorus compound. The resultant products from the two processes are accordingly completely different. The product of Hoiberg is an oxygen condensed asphalt. The final product of the two stage process of the present invention is a combined phosphorus sulfide-oxygen condensed resin or, alternatively, a combined phosphorus sulfide-sulfur condensed resin. The product of Hoiberg is not a flame retardant material and is not the flame retardant material of the instant invention. It is simply an air-blown asphalt having a higher than normal penetration as compared with ordinary air-blown asphalts. There is not and cannot be the flame retardant non-corrosive product of the present invention.

We must agree with appellants' interpretation of Hoiberg. The reference is replete with statements as to the catalytic nature of the phosphorus compounds. Such compounds are stated to be stable. We perceive no reason to doubt either Hoiberg or appellants' specification. It seems to us that there is a difference between Hoiberg's process and appellants'; the former discloses a one-step process in which a high molecular weight petroleum hydrocarbon is reacted with *oxygen* in the presence of a phosphorus catalyst, while the latter discloses a first step in which the petroleum hydrocarbon [3] is reacted with a phosphorus compound. Certainly this difference in processes could result in the formation of different products.

The rejection of all the appealed claims was bottomed on the board's belief that Hoiberg and appellants utilized the same process for making their products and thus the products must be the same. We have expressed our disagreement with the board's basic premise. We find that appellants disclose and claim, as a first step in their process, a *condensation reaction* between a petroleum hydrocarbon and a phosphorus compound. Hoiberg does not remotely suggest such a process, and thus does not suggest the product formed thereby, or its flame-retardant property. Nor, of course, does Hoiberg suggest an article rendered fire-resistant by means of appellants' products or a method for making such an article.

We conclude that the subject matter defined by the appealed claims is nonobvious under 35 U.S.C. § 103. The board's decision is reversed.

Reversed.

---

3. Appellants do not assert that their petroleum hydrocarbons are different from Hoiberg's.